This is case number 416-0001. People of the State of Illinois v. Jerry Taylor. For the appellant, we have Mr. Costello, and for the appellee, we have Mr. Majors. You may proceed, counsel. Thank you. May it please the court, this is a case where in the main the defendant is claiming he was not admonished properly under 401 for NCA. The sentence, the defendant was tried, found guilty, and he was sentenced to 30 years barbering of corrections on armed robbery, count one, and 14 years sentence on felon in possession of a weapon, gun, for 14 years to run concurrent. He complains that of the admonishments given to him under 402, that they were proper once, they were proper twice, when he wanted to go pro se, before his sentencing and cranial hearing, the court in its admonishments stated that he would receive a class 3 on the gun charge, which was 2 to 10 years. That was incorrect. He should have been sentenced or advised that he be on lawful possession, class 2, 3 to 14. He also said class 3 on the improper and mistaken admonition. We're claiming, your honor, that based upon 401, parent A, that he went pro se for his cranial hearing and for sentencing on improper admonishments, although he had been admonished properly before and after. I might as well get to this, or I'm sure the state will state it. This was a fairly intelligent man, fairly articulate, apparently from the record knew what he was doing. He was represented by counsel? Yes. At trial? No, not at trial, your honor. Yes. At trial he was. Okay, so has he raised questions after conviction of the adequacy of his representation? He did. He's raised a cranial hearing. Okay. And the court dealt with that and denied him an attorney. So your claim is the court didn't deal with it adequately? The court should have appointed counsel? He didn't appoint counsel, your honor. Okay. So you argue that the motion for verdict should have been granted? Yes, that the evidence was insufficient to convict him based on an attack on probable cause and stopping of the vehicle for a lengthy period of time. If that were found in his favor, everything else would fall as fruit of the poisonous tree. So he does claim that driving without headlights at 3.20 in the morning is not probable cause for the stop? It was probable cause for the stop, your honor, but it was not, in our view, probable cause to bring a canine dog and delay the arrest. Your position is that they improperly extended the stop to bring in the canine? That's correct. Was the time length established? The defendant couldn't remember, your honor, from the record. No. Were the officers still engaged in the mission for their stop? Yes, they took them. They searched the vehicle and found a glove, which obviously was used in the armed robbery by one of the persons, and also... So if you develop additional probable cause after the initial perfectly appropriate probable cause stop, that doesn't allow you to continue on with your investigation? We're claiming, your honor, that yes, if a proper probable cause stop lights out, that you should immediately process that to a ticket and allow the driver to leave. Typically, you stop someone with probable cause for driving without headlights at night, it might be 15 minutes, maybe 20, just to go through processing, to have a license and check the amount and all that, just to process the giving of a ticket if you're going to. If during the time you're processing the ticket, the drug dog shows up and sniffs the car and hits on the car, is there anything improper in that? Only the delay, your honor. Only in what? Only the delay. Well, but I hypothesized no delay. That is, during the processing of the traffic stop. I would think that bringing a dog, processing a no-light traffic stop, that bringing a canine would not be reasonable. Well, that's a different matter, though. So even if the dog showed up, let's say, three minutes into the traffic stop, that's still improper? There had to be some, and I'll point out the statement of facts, your honor, one of the officers on the traffic stop contended that he recognized from the description given over the dispatcher that one of the persons, Mr. Green, was the armed robber. You didn't answer my question. If the car is stopped for having no headlights at three in the morning, and the drug dog shows up three minutes into the stop, is there any impropriety in the dog walking around and sniffing? I would say no, your honor. Okay. Well, and if the dog hits on the car, that would be probable cause to search the car, then, would it not? It would, your honor. So your argument is they held the car beyond the normal length appropriate to process the traffic ticket? That's correct. What time does this record show? How long did they keep the car? How long was it necessary? When did the dog show up, et cetera? The record is not, it does not demonstrate the timeline, your honor. How are we supposed to then reverse on the basis of the argument you're making? Because the defendant claims that the dog should not have come and there was a delay. Well, but isn't that conclusory that there was a delay? Yes, the record does not reflect a timeline. Okay, go ahead. So for those reasons that he was not properly admonished and was told 2 to 10, which was incorrect on class 3, and there's a Supreme Court case, we've cited it just recently, where they indicated that no prejudice had occurred, but that's where they gave a sentence lower than the incorrect admonishment. In this case, 14 years is higher than 10 years, which he told the defendant. That's basically his argument, your honor, that 401 was not complied with, and therefore he should be granted either a new trial or sent back for resentencing. The issue becomes, technically, if the admonishments were given, although the record does not show he knew the proper sentence on the unlawful possession of the weapon, that either we enforce 401A or we don't. And I would suggest that anytime there's been a violation of 401A, that it is incumbent upon a reviewing court to enforce it so that we just don't have inroad upon inroad upon inroad on the statute. But that's for you to decide. The other issue he raises is simply his confession, his tape, where he confessed, and the state wished to admonish and play it in front of the jury, and it was contained in paragraphs 7 and 8 of the defendant's motion in limine. Now, the tape was particularly egregious in the sense that the police officer who was interrogating the defendant was using standard interrogation techniques, and I believe the tape said at one point, You're a liar. What about Greene telling us all about this? Greene is the co-defendant who testified against him. And the suggestion, there's a case that allows it to show that it was showing that the police had to have this hearsay in of Greene to make the tape sensible. But one point, it was not redacted, and we claim that the court should have given an instruction saying, We totally disregard the police statements of reflecting on the guilt or innocence of the defendant. And although a limiting instruction was given, and the defendant's counsel argued, the tapes, if they were admissible, and they were, to a point, should have been redacted, and that stuff about police officers' opinions, interrogation, should have been removed. We feel that is extraordinarily prejudicial. In this county, generally speaking, the inhabitants believe in the police officers. They're our friends, they protect, and they serve us. This is in Chicago. And with those statements made by the police officers, with the jury, they, I think, just went overboard on finding the defendant guilty. In any event, he claims that those statements should have been excluded on his motion to eliminate or redacted so that they would be clean. No instruction was given about the limiting instruction about the fact that this was, the instruction said this is police technique. The record is totally absent of any discussions of what police technique is, or what is proper or improper. So the court gave instruction without any foundation in the record. For those reasons, we would suggest to the court that the case be reversed. I'm not going to argue the rest of the points. I think they're fully briefed. And unless the court has some questions, this concludes my argument. All right, thank you, counsel. You'll have time on rebuttal if you so desire. Mr. Majors? May I please, the court, counsel? As the court knows, I've divided the defendants' arguments into 20 arguments. I don't know if the court wants to go through all of them. The first two are concerning the facts. I won't belabor the facts. Consistently, throughout the remainder of the state's arguments, nobody ever raised these issues previously. But to counter that, the defendant argues plain air. With regard to the canine sniff, the court's already noted there's nothing in the record to support the defendant's argument. Further, the defendant was the driver of the car and consented to the search. As to paragraphs 7 and 8 of their motion in limine, it says nothing about redacting. It says, 7 says that the references to the statements by Mr. Green are inadmissible hearsay. Well, even if there is some error here, Green testified. And the jury was instructed with 317 about Green's testimony. Paragraph 8 says that the statements by the police officers are conclusory in nature. It doesn't say anything about redacting. There was a defense instruction given to the jury. It's at C114. If your staff wants to take a look at it, I could tender it up to the court, if you like. And it's in the state's brief at page 23. That instruction was prepared by a defense counsel. It actually had two lawyers at trial, I think. And it talks about how the jury should consider Green's statements on the tape and that the police officers' statements are just opinions and they are not to be considered as substantive evidence. So that instruction was given plus 317. The argument about the victim narrating the video is based on the Sykes case, which was someone testifying about a video that they did not experience or see. In this case, the clerk was there at the robbery and described the video. So the Sykes case is not authority for defendant's argument. The text messages on defendant's cell phone, that was by consent. The jury was polled as a group. The judge asked them to raise their hands. A defense counsel agreed to that. There was one juror who was accused of sleeping. The judge had a hearing. They went all through that. The judge determined he wasn't sleeping. I don't understand the argument about a photographic identification of Colton Green. It seems to me that would be Colton Green's argument, not defendant's. But in any event, I don't see how that's error. If it was error, we still have the picture on the video of the robbery. And Mr. Green had some distinctive tattooing on his neck, on his lower face and neck. So there was a positive idea of him. Plus, he testified for the state that he was the robber, and he participated in it along with the defendant. We covered the limiting instruction. The best issue that they've raised here, the one that has any merit at all, is this idea that when defendant chose to represent himself, the judge misstated the maximum penalty on count two, the unlawful possession of a weapon by a felony. He said 10 years instead of 14 years. The state's argument is before that and after that, the judge correctly told him it was 14 years. Plus, I think the record shows that Mr. Costello and I have discussed how intelligent this defendant was and how bizarre it is that he involved himself in this small-time robbery. He was educated. He was articulate. He was picking up on the criminal justice system rapidly. He did a fair job of representing himself. And at the sentencing hearing, I'm on page 57 of the state's brief, when the judge asked him about the sentence on count two, the unlawful possession of a weapon charge, a defendant said, in terms of possession of a weapon by a felony, I would ask whatever you feel is necessary in terms of that charge. So, citing the right case, the judge's misstatement had everything to do with the defendant's choice to represent himself. So, questions? I don't see any, counsel. Thank you. Any rebuttal, Mr. Costello? No, I don't, unless the court has some questions. No questions at this time. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess.